ORIGINAL

Approved: _____
MEGAN GAFFNEY
Assistant United States Attorney

Before:   THE HONORABLE RONALD L. ELLIS
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - - x

**15 MAG 0299**

DOC # 1

UNITED STATES OF AMERICA          :   COMPLAINT

- v. -                            :   Violation of
                                      21 U.S.C. § 846
JOSE AVILES,                      :
  a/k/a "Coco,"                       COUNTY OF OFFENSE:
CARLOS RAMOS,                     :   Bronx
  a/k/a "Choco,"
PEDRO VASQUEZ,                    :
  a/k/a "Bluehat,"
  a/k/a "Indio,"                  :
ADDIEL DINZEY,
  a/k/a "Glasses,"                :
  a/k/a "Gordo," and
ANIBAL CRUZ,                      :
  a/k/a "Super,"
                                  :
        Defendants.

- - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

        OSCAR RIVAS, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD") and charges as follows:

## COUNT ONE

        1.    From at least in or about March 2014 through at least on or about January 15, 2015, in the Southern District of New York and elsewhere, JOSE AVILES, a/k/a "Coco," CARLOS RAMOS, a/k/a "Choco," PEDRO VASQUEZ, a/k/a "Bluehat," a/k/a "Indio," ADDIEL DINZEY, a/k/a "Glasses," a/k/a "Gordo," and ANIBAL CRUZ, a/k/a "Super," the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2.    It was a part and an object of the conspiracy that JOSE AVILES, a/k/a "Coco," CARLOS RAMOS, a/k/a "Choco," PEDRO VASQUEZ, a/k/a "Bluehat," a/k/a "Indio," ADDIEL DINZEY, a/k/a "Glasses," a/k/a "Gordo," and ANIBAL CRUZ, a/k/a "Super," the defendants, and others known and unknown, would and did distribute and possess with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1).

3.    The controlled substance that JOSE AVILES, a/k/a "Coco," CARLOS RAMOS, a/k/a "Choco," PEDRO VASQUEZ, a/k/a "Bluehat," a/k/a "Indio," ADDIEL DINZEY, a/k/a "Glasses," a/k/a "Gordo," and ANIBAL CRUZ, a/k/a "Super," the defendants, conspired to distribute and possess with the intent to distribute was one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of 21 U.S.C. § 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for deponent's knowledge and for the foregoing charge are, in part, as follows:

4.    I am a Detective with the NYPD, and I have been personally involved in the investigation of this matter.  I have been a Detective for six and a half years.  During that time, I have received training in narcotics investigations and been involved in numerous such investigations.

5.    I am familiar with the facts and circumstances set forth below from my personal participation in the investigation, including my review of pertinent documents and reports of the investigation, criminal history records, and other records, and from my conversations with other law enforcement officers. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.  Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

6.    Based on my training and experience, I know that heroin is sold in packages that also function as units of measurement.  A glassine of heroin generally refers to an envelope containing approximately 0.05 grams.  The envelope often bears a distinctive mark called a stamp that serves to "brand" the heroin inside.  Ten

2

glassines are generally referred to as a bundle.  Ten bundles are generally referred to as a sleeve.

7.     Based on my participation in this investigation, including reviewing records, participating in surveillance, and reviewing audio and video recordings, among other things, I have become familiar with JOSE AVILES, a/k/a "Coco," CARLOS RAMOS, a/k/a "Choco," PEDRO VASQUEZ, a/k/a "Bluehat," a/k/a "Indio," ADDIEL DINZEY, a/k/a "Glasses," a/k/a "Gordo," and ANIBAL CRUZ, a/k/a "Super," the defendants.  I have learned, among other things, that the aforementioned defendants work together to sell heroin bearing the stamp "Coca-Cola," in and around 1730 Andrews Avenue, a residential building in the Bronx ("Residential Building-1").

### April 7, 2014 Heroin Buy from CARLOS RAMOS and JOSE AVILES

8.     On or about April 7, 2014, an NYPD officer working in an undercover capacity ("UC-1") purchased heroin from CARLOS RAMOS, a/k/a "Choco," and JOSE AVILES, a/k/a "Coco," the defendants.  I have spoken with UC-1, reviewed reports, reviewed audio and video recordings, and reviewed telephone records, and from that I have learned, among other things, the following:

a.     UC-1 called a cellphone number that UC-1 understood to belong to RAMOS ("Cellphone-1") to arrange the purchase of heroin.  No one answered Cellphone-1, so UC-1 left a message.

b.     Approximately one minute later, UC-1 received a call from Cellphone-1.  UC-1 recognized the voice on the call to be that of CARLOS RAMOS, a/k/a "Choco," the defendant.  UC-1 told RAMOS, in substance and in part, that he needed two bundles.  RAMOS replied, in substance and in part, okay.

c.     UC-1 travelled to Residential Building-1.  UC-1 called Cellphone-1.  A man answered, and UC-1 recognized his voice to be that of "Coco."  UC-1 stated, in substance and in part, that he had spoken with RAMOS and he needed two bundles.  "Coco" replied, in substance and in part, that he was coming down.

d.     UC-1 met with "Coco," later identified as JOSE AVILES, the defendant, inside of Residential Building-1.  The meeting was video and audio recorded.

e.     UC-1 handed AVILES $140.00 in U.S. currency.  In return, AVILES handed UC-1 20 glassine envelopes containing a substance that appeared to be heroin.  The glassine envelopes bore the stamp "Coca-Cola."

3

f.    UC-1 asked AVILES, in substance and in part, if AVILES would lower the price if UC-1 purchased more heroin, because UC-1 wanted to purchase ten next time.  AVILES replied, in substance and in part, that the price would be less.

g.    AVILES told UC-1, in substance and in part, that Cellphone-1 was used by both AVILES and RAMOS, and that RAMOS would use Cellphone-1 for three days, and then AVILES would use Cellphone-1 for three days.

h.    The 20 glassines were submitted to the NYPD laboratory for testing.  The 20 glassines were found to weigh 0.945 grams, and a sample of the substance inside the 20 glassine envelopes was found to be heroin.

### May 8, 2014 Heroin Buy from CARLOS RAMOS and JOSE AVILES

9.    On or about May 8, 2014, UC-1 purchased heroin from CARLOS RAMOS, a/k/a "Choco," and JOSE AVILES, a/k/a "Coco," the defendants.  I have spoken with UC-1, reviewed reports, reviewed audio and video recordings, and reviewed telephone records, and from that I have learned, among other things, the following:

a.    On or about May 7, 2014, UC-1 called Cellphone-1 to arrange the purchase of heroin.  UC-1 spoke with RAMOS and told him, in substance and in part, that he needed AVILES to call him. Approximately one minute later, AVILES called UC-1.  UC-1 told AVILES, in substance and in part, that he was going to purchase ten bundles the next day.

b.    On or about May 8, 2014, UC-1 met with RAMOS inside of Residential Building-1.  The meeting was audio and video recorded.  UC-1 told RAMOS, in substance and in part, that he needed ten bundles.  RAMOS told UC-1, in substance and in part, that AVILES had not mentioned this to him.  RAMOS then used a cellular phone to call someone.  RAMOS passed the cellphone to UC-1, who recognized the voice on the other end to be that of AVILES. AVILES said, in substance and in part, that bundles "cost 75 each," which UC-1 understood to be $75.00.  UC-1 said okay, and then passed the cellular phone to RAMOS.  RAMOS told UC-1, in substance and in part, that he would be back shortly.

c.    RAMOS went upstairs in Residential Building-1.  When RAMOS returned, UC-1 handed RAMOS $750.00 in U.S. currency.  In return, RAMOS handed UC-1 ten bundles containing a substance that appeared to be heroin.  The glassines in the bundles bore the stamp

"Coca-Cola."

        d.   The ten bundles were submitted to the NYPD laboratory for testing.  The ten bundles were found to weigh 4.303 grams, and a sample of the substance inside the ten bundles envelopes was found to be heroin.

    10.   In connection with this investigation, I and other law enforcement have conducted surveillance outside of Residential Building-1.  From that surveillance, I observed, among other things, the following:

        a.   On or about August 26, 2014, PEDRO VASQUEZ, a/k/a "Bluehat," a/k/a "Indio," appeared to be engaging in what I believe, based on my training and experience, were hand-to-hand drug transactions outside of Residential Building-1.

        b.   One of the individuals who appeared to engage in a hand-to-hand drug transaction with VASQUEZ smelled what appeared to be a glassine envelope and then dropped the glassine envelope on the sidewalk.  An NYPD detective recovered the glassine envelope from the sidewalk.  The glassine envelope contained a substance that appeared to be heroin, and bore the stamp "Coca-Cola."

        c.   On or about August 27, 2014, VASQUEZ appeared to be engaging in what I believe, based on my training and experience, were hand-to-hand drug transactions outside of Residential Building-1.  VASQUEZ appeared to engage in hand-to-hand drug transactions with four individuals.  The surveillance was video recorded.

    11.   I have reviewed NYPD records, and from that review, I have learned, among other things, that on or about August 28, 2014, PEDRO VASQUEZ, a/k/a "Bluehat," a/k/a "Indio," the defendant, was observed conducting what appeared to be a hand-to-hand drug transaction in front of a building near Residential Building-1. VASQUEZ was arrested for criminal sale of a controlled substance. The individual who purchased a controlled substance from VASQUEZ was also arrested.  Pursuant to that arrest, two glassines of heroin bearing the stamp "Coca-Cola" were recovered.

### November 11, 2014 Heroin Buy from CARLOS RAMOS

    12.   On or about November 11, 2014, UC-1 purchased heroin from CARLOS RAMOS, a/k/a "Choco," the defendant.  I have spoken with UC-1 and reviewed reports, and from that I have learned, among other things, the following:

      a.   UC-1 traveled to Residential Building-1.  Once there, UC-1 placed a call to a cellphone provided to UC-1 by JOSE AVILES, a/k/a "Coco," the defendant.  A man answered the phone and UC-1 recognized his voice as belonging to RAMOS.  UC-1 stated, in substance and in part, that he was in the building.  RAMOS said, in substance and in part, that he was coming down to meet him.

      b.   Shortly thereafter, RAMOS met with UC-1.  The meeting was audio and video recorded.  UC-1 gave RAMOS $380.00 U.S. currency.  In return, RAMOS handed UC-1 five bundles containing a substance that appeared to be heroin.  The glassines in the bundles bore the stamp "Coca-Cola."

      c.   RAMOS told UC-1, in substance and in part, that: (1) RAMOS had a new cellphone number ("Cellphone-2"); (2) when UC-1 called Cellphone-2, someone working with RAMOS would answer and pass the message on to RAMOS; (3) ADDIEL DINZEY, a/k/a "Glasses," a/k/a "Gordo," was working with RAMOS; and (4) PEDRO VASQUEZ, a/k/a "Bluehat," a/k/a "Indio," no longer worked with RAMOS.

<u>November 11, 2014 Heroin Buy from ANIBAL CRUZ</u>

    13.   On or about November 11, 2014, an officer with the NYPD working in an undercover capacity ("UC-2") purchased heroin from ANIBAL CRUZ, a/k/a "Super," the defendant.  I have spoken with UC-2, reviewed audio and video recordings, reviewed reports, and reviewed telephone records, and from that I have learned, among other things, the following:

      a.   UC-2 placed a call to Cellphone-2.  A man answered Cellphone-2 and identified himself as "Super."  UC-2 said, in substance and in part, that he "needed six," referring to six glassines of heroin.  "Super" replied, in substance and in part, that he only had three left, which UC-2 understood to mean three glassines of heroin, and UC-2 should meet him at a residential building in the Bronx ("Residential Building-2").  Residential Building-2 is approximately 500 feet from Residential Building-1.

      b.   UC-2 went to Residential Building-2 and met with "Super," later identified as ANIBAL CRUZ, the defendant.  The meeting was audio and video recorded.

      c.   UC-2 handed CRUZ $40.00 U.S. currency.  In return, CRUZ gave UC-2 three glassine envelopes containing what appeared to be heroin, and $10.00 in change.  The glassine envelopes bore the stamp "Coca-Cola."

d.    The three glassines were submitted to the NYPD laboratory for testing.  The three glassines were found to weigh 0.149 grams, and a sample of the substance inside the three glassine envelopes was found to be heroin.

## November 19, 2014 Heroin Buy from ADDIEL DINZEY, CARLOS RAMOS, and JOSE AVILES

14.  On or about November 19, 2014, UC-1 purchased heroin from ADDIEL DINZEY, a/k/a "Glasses," a/k/a "Gordo," CARLOS RAMOS, a/k/a "Choco," and JOSE AVILES, a/k/a "Coco," the defendants.  I have spoken with UC-1, reviewed reports, reviewed audio and video recordings, and reviewed telephone records, and from that I have learned, among other things, the following:

a.    UC-1 called Cellphone-2.  A man answered the phone who identified himself as "Gordo."  UC-1 told "Gordo," in substance and in part, that he had been told to call the number by RAMOS and AVILES, and he wanted to purchase five bundles.  "Gordo" responded, in substance and in part, that he would speak with RAMOS and AVILES and call UC-1 back.

b.    Shortly thereafter, "Gordo" called UC-1 and said, in substance and in part, it was okay to come.  UC-1 understood this to mean that he should go to Residential Building-1 to purchase five bundles.

c.    UC-1 traveled to Residential Building-1.  UC-1 met with RAMOS, AVILES, and "Gordo," later identified as ADDIEL DINZEY. The meeting was audio recorded.

d.    RAMOS told UC-1, in substance and in part, that he had a sleeve available.  UC-1 replied, in substance and in part, that he did not have enough money for a sleeve.

e.    UC-1 gave RAMOS $380.00 U.S. currency.  In return, RAMOS gave UC-1 five bundles containing a substance that appeared to be heroin.  The glassines in the bundles bore the stamp "Coca-Cola."

f.    The five bundles were submitted to the NYPD laboratory for testing.  The five bundles were found to weigh 2.1 grams, and a sample of the substance inside the five bundles was found to be heroin.

November 19, 2014 Heroin Buy from ADDIEL DINZEY

15.   On or about November 19, 2014, UC-2 purchased heroin from ADDIEL DINZEY, a/k/a "Glasses," a/k/a "Gordo," the defendant.   I have spoken with UC-2, reviewed reports, and reviewed audio and video recordings, and from that I have learned, among other things, the following:

a.   UC-2 called Cellphone-2.   A man answered Cellphone-2 and identified himself as "Glasses."   UC-2 said, in substance and in part, that he needed a bundle.   "Glasses" replied, in substance and in part, that he would be down in a few.

b.   UC-2 traveled to Residential Building-1 and met with "Glasses," later identified as ADDIEL DINZEY.   The meeting was audio and video recorded.

c.   DINZEY handed UC-2 a bundle containing a substance that appeared to be heroin.   The glassines in the bundle bore the stamp "Coca-Cola."   In return, UC-2 gave DINZEY $80.00 U.S. currency.

d.   The bundle was submitted to the NYPD laboratory for testing.   The bundle was found to weigh 0.394 grams, and a sample of the substance inside the bundle was found to be heroin.

16.   On or about December 18, 2014, UC-1 met with CARLOS RAMOS, a/k/a "Choco," the defendant.   I have reviewed a video recording of the meeting, and have spoken with UC-1, who told me, in substance and in part, that UC-1 asked RAMOS how many bundles of heroin RAMOS sold in a day.   RAMOS replied, in substance and in part, that he sold 60 sleeves a day.[1]

17.   In addition to the aforementioned undercover heroin buys, from on or about March 28, 2014, up to on or about January 15, 2015, I and other law enforcement conducted thirteen undercover purchases of heroin, of which seven involved JOSE AVILES, a/k/a "Coco," seven involved CARLOS RAMOS, a/k/a "Choco," and four involved ADDIEL DINZEY, a/k/a "Glasses," a/k/a "Gordo."

_____

[1] Based on my training and experience, I know that 20 glassines of heroin generally weigh approximately one gram, meaning that each individual glassine weighs approximately 0.05 grams.   60 sleeves is the equivalent of 600 bundles.   600 bundles is the equivalent of 6000 glassines.   6000 glassines weigh approximately 300 grams.   Thus, 60 sleeves weigh approximately 300 grams.

WHEREFORE, deponent respectfully requests that JOSE AVILES, a/k/a "Coco," CARLOS RAMOS, a/k/a "Choco," PEDRO VASQUEZ, a/k/a "Bluehat," a/k/a "Indio," ADDIEL DINZEY, a/k/a "Glasses," a/k/a "Gordo," and ANIBAL CRUZ, a/k/a "Super," the defendants, be imprisoned or bailed, as the case may be.

_____
OSCAR RIVAS
Detective
New York City Police Department


Sworn to before me this
2nd day of February, 2015

_____
THE HONORABLE RONALD L. ELLIS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK